## CIRCUIT COURT OF FAIRFAX COUNTY

Ollin R. Crawford

v.

Edward W. Murray, Director,
Department of Corrections

March 18, 1991

Case No. (Law) 88778

By JUDGE THOMAS J. MIDDLETON

This cause came to be heard upon petitioner's motion to reconsider this Court's ruling contained in an opinion letter dated December 28, 1990. The Court had ruled that petitioner's claim of unlawful detention was not yet of the type recognized by Virginia courts and further that Virginia law did not recognize complaints regarding a prisoner's conditions of confinement as proper for habeas corpus review. Having reviewed its prior opinion, this Court recognizes that it may not be clear whether the petition was held to be not yet ripe for consideration or whether the petition was considered and rejected on its merits. Such an ambiguity could create procedural difficulty in the future. Therefore, the motion for reconsideration is granted. The petition for habeas corpus is denied on the merits.

The petitioner alleges that she as indicted and convicted on four counts of the common law crime of robbery, which is defined as the taking, with intent to steal, of the personal property of another, from his person or

in his presence, against his will by violence or intimidation. *Pritchard v. Commonwealth*, 225 Va. 559 (1983).

The petitioner alleges that Court and Legal Services for the Virginia Department of Corrections, which is the agency charged with the responsibility of computing inmate sentences to determine discretionary parole eligibility dates, has applied Virginia Code § 53.1-151(B1) erroneously to her case and determined that she is not to be eligible for parole. Affidavit of R. F. Wilson (March 15, 1989) (respondent's Exhibit I). The statute in effect at the time of Crawford's convictions provided "[a]ny person convicted of three separate felony offenses of murder, rape or armed robbery when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole." Va. Code § 53.1-151(B1).

At the time of petitioner's robbery conviction, there was another Virginia statute which made it a separate felony to "use . . . any . . . firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery." Virginia Code § 18.2-53.1. Petitioner apparently was not convicted under this statute and argues that such a conviction is a necessary predicate to the application of § 53.1-151(B1), *supra*.

As stated previously, the Court has not been made aware of any Virginia case law permitting an attack on a prisoner's classification where the underlying detention is lawful. Having considered the matter further, and after review of the federal case law, the Court has determined that it is appropriate to consider the allegations of the petitioner now while the best evidence is available, rather than wait until the petitioner would otherwise be eligible for parole but for Virginia Code § 53.1-151(B1). *See, Preiser v. Rodriguez*, 411 U.S. 475; *Franklin v. Shields*, 569 F.2d 784 (4th Cir. 1977) *cert. denied* 435 U.S. 1003 (1978).

The petitioner contends that her "offenses have been arbitrarily and capriciously classified as 'armed' robbery even though no finding as to my being 'armed' is made by the Trial Court and no allegation of the same is contained in my indictments . . . ." Original Petition for Writ of Habeas Corpus, para. 14.a.

It is not clear that Virginia courts would extend due process protection to allow judicial review of an

inmate's classification by the Department of Corrections where immediate release would not follow should the prisoner prevail. In *Preiser v. Rodriguez, supra*, at 487, the United States Supreme Court stated in dicta that "even if restoration of respondent's good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself." The Court will adopt a procedure similar to that followed by the United States Supreme Court in *Superintendent v. Hill*, 472 U.S. 445 (1985), and assume, without deciding, that such protection would be afforded.

In *Hill*, the respondents, two inmates in a Massachusetts state prison, were charged with violating disciplinary rules and appeared before the disciplinary board. The evidence implicating respondents was that a prison guard heard commotion from the area of a walkway and discovered there an inmate who had apparently just been assaulted. Three other inmates, including the respondents, were seen fleeing down the walkway, and no other prisoners were observed. The respondents testified to their innocence before the board. The victim submitted written statements that the respondents had not caused his injuries.

After hearing the evidence, the board found the respondents guilty and recommended that they each lose one hundred days of good time and be confined in isolation for fifteen days. After an unsuccessful appeal to the superintendent of the prison, the respondents filed a complaint in the Massachusetts Superior Court.

The Superior Court concluded that "the Board's finding of guilty rested, in each case, on no evidence constitutionally adequate to support that finding." *Id.* at 448. On appeal, the Massachusetts Supreme Judicial Court affirmed and held that the loss of good time credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, and that the record failed to present even "some evidence which, if believed, would rationally permit the board's findings." *Id.* at 449. (Citation omitted.)

The Supreme Court of the United States held that it was not necessary to determine whether the due process clause required judicial review because the constitutional

issue could be reached under existing state law. *Id.* at 453. The Court went on to hold "that revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* at 454. Although the evidence in *Hill* was found to be "meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record [was] not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457.

Assuming then that due process protection should be afforded this petitioner, the issue before the Court becomes whether there is some evidence to support the decision by the Department of Corrections to apply Virginia Code § 53.1-151(B1) or if the action was arbitrary.

At the time of the conviction in this case, there was no statute in Virginia defining or providing a punishment for "armed robbery." The Department apparently looked to the evidence in the case and determined that the robberies for which the petitioner was convicted were indeed "armed." Such a determination is amply supported in the record and is not arbitrary. *See* Respondent's Opposition to Petitioner's Motion for Reconsideration, pp. 4-5. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill, supra* at 456. The petition for habeas corpus is denied.